UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

THE GLENN H. CURTISS
MUSEUM OF LOCAL HISTORY,

                          Plaintiff,                    DECISION AND ORDER

vs.
                                                        20-CV-6237 (CJS)

CONFEDERATE MOTORS, INC. AND
CURTISS MOTORCYCLE COMPANY, INC.,

                          Defendants.

_____

     Plaintiff, The Glenn H. Curtiss Museum of Local History ("the Curtiss Museum"), filed this action against Defendants Confederate Motors, Inc. ("CMI") and Curtiss Motorcycle Company, Inc. ("Curtiss Motorcycle") (collectively, "Defendants") for trademark infringement and breach of contract. Compl., Apr. 13, 2020, ECF No. 1. The matter is presently before the Court on the Curtiss Museum's motion for a preliminary injunction, Defendants' motion to dismiss pursuant to Rules 12(b)(2) and 12(b)(3) of the Federal Rules of Civil Procedure, and the Curtiss Museum's cross-motion for discovery or to replead. Mot. for Prelim. Inj., Apr. 24, 2020, ECF No. 4; Mot. to Dismiss, May 21, 2020, ECF No. 9; Cross-Mot., June 29, 2020, ECF No. 14.

     For the reasons stated below, Defendants' motion to dismiss [ECF No. 9] is denied without prejudice, the Curtiss Museum's cross-motion for discovery [ECF No. 14] is denied as moot, and the Curtiss Museum's motion for a preliminary injunction [ECF No. 4] is denied. Defendants are directed to file and serve an answer to the Curtiss Museum's complaint within 30 days of the date of this order.

BACKGROUND

The Court has drawn the following background from the Curtiss Museum's complaint, and the affidavits submitted by the parties. *See, e.g., Grand River Enters. Six Nations, Ltd. v. Pryor*, 425 F.3d 158, 165 (2d Cir. 2005).

Glenn H. Curtiss was "a pioneer aviator who also achieved international fame as a designer and builder of bicycles and motorcycles" in the early twentieth century. Compl. at ¶ 8. The Curtiss Museum, located in Curtiss' birthplace of Hammondsport, New York, has been chartered as a corporation under the Education Law of the State of New York since 1961. Compl. at ¶ 4, 7. The museum is dedicated to preserving Curtiss' legacy as a "pioneer in both aviation and motorcycle design and it contains a priceless collection of artifacts relating to early aviation and Curtiss's work with motorcycles, as well as local history and memorabilia from Curtiss's heyday." Compl. at ¶ 12.

Defendant CMI is a corporation organized under the laws of the State of Delaware, with an office for the transaction of business located in Birmingham, Alabama.[1] Compl. at ¶ 5. Defendant Curtiss Motorcycle, the "spiritual successor" corporation to Defendant CMI, is an organization existing under the laws of the State of Delaware, with its headquarters located in Birmingham, Alabama. Chambers

---

[1] Defendants have submitted two affidavits from H. Matthew Chambers, the President of Curtiss Motorcycle. *See, e.g.,* Chambers Aff.(2), June 29, 2020, ECF No. 15-1. Chambers states that CMI's name was legally changed to Curtiss Motorcycle Company, Inc. in January 2018, and that CMI sold the use right for "Confederate" to another company, thus indicating that Curtiss Motorcycle is the only proper Defendant in this case. *Id.* at ¶ 3–4. Nevertheless, that issue has not been fully briefed by the parties, and is not now squarely before the Court. For the purposes of this decision and order, the Court will continue to refer to both "Defendants."

Aff.(1), ¶ 2, May 21, 2020, ECF No. 9-2. Curtiss Motorcycle "tak[es] inspiration from Glenn H. Curtiss . . . to create principled, timeless designs built to the highest standards for a discerning clientele of intelligent, progressive women and men who embrace the joys and freedom of an inclusive future for motorcycling." Chambers Aff.(2), ¶ 5, June 29, 2020, ECF No. 15-1. The company "designs, builds and sells stunningly unique, high performance motorcycles," but it has no physical showrooms, dealerships or sales floors anywhere. Chambers Aff.(2) at ¶ 7, 10. All of Curtiss Motorcycle's sales are web-based, and it has never sold a motorcycle in the state of New York, Connecticut, or Vermont. Chambers Aff.(2) at ¶ 12–15.

In 1905, Glenn Curtiss first used a cursive version of his last name ("the Script Mark") in connection with his company, the Curtiss Manufacturing Company. Compl. at ¶ 16. Although Curtiss himself abandoned use of the Script Mark after the merger of his company with another firm in 1929, the Curtiss Museum began using the Script Mark when it opened its doors to the public in 1962. Compl. at ¶ 19. The Curtiss Museum has been using the Script Mark continuously since that time in informational materials and marketing materials, on its website, and on museum merchandise. Compl. at ¶ 21–22. Nevertheless, until recently, the Curtiss Museum had not applied to the United States Patent and Trademark Office ("USPTO") to register the Script Mark. *See, e.g.,* Johnson Decl. (Ex. B), Apr. 24, 2020, ECF No. 4-1 (a copy of the "Office Action" issued by the USPTO in March 2019 pertaining to the museum's application to register the Script Mark).

In 2012, CMI registered the word mark[2] "CURTISS," with the USPTO, for the class of goods described as "Motorcycles and structural parts therefor." At some point in 2017, CMI closed its business and reopened under the name Curtiss Motorcycle Company, Inc.. Compl. at ¶ 24–26. As part of its reopening, CMI and Curtiss Motorcycle began using the Script Mark on its website and on merchandise sold through its website. Compl. at ¶ 27. That same year, CMI also registered the word mark "CURTISS HERCULES" for "electric motorcycles." Compl. at ¶ 29.

"Believing that [CMI's] rebranding effort posed a risk of confusion and damaged the identify and image the Curtiss Museum had carefully cultivated over decades, on March 22, 2018, the Curtiss Museum commenced suit against [CMI]" in this District for, *inter alia*, trademark infringement, unfair competition, and various violations of New York General Business Law. Compl. at ¶ 31. On May 24, 2019, the Curtiss Museum and CMI executed a settlement agreement to resolve their differences and terminate the litigation. Compl. at ¶ 38. Among the provisions of the settlement agreement is a specification about how the Script Mark may be used by the parties in the future. Compl. at ¶ 40.

The Curtiss Museum has filed the present action alleging trademark infringement and a supplemental state law claim for breach of contract because it believes that Defendants have continued to misuse the Script Mark in violation of both 15 U.S.C. § 1125 (a) and (c), and the settlement agreement. Compl. at ¶ 45–46.

---

[2] CMI's registration of "CURTISS" was for standard characters only, not the cursive version of the word/name is in the Script Mark. *See* Johnson Decl. (Ex. B).

The Curtiss Museum also seeks a preliminary injunction "enjoining and restraining Defendants . . . from using the CURTISS Script Mark or its derivatives and any other confusingly similar marks during the pendency of this litigation and until further order of this Court." Mot. for Prelim. Inj., ECF No. 4. Defendants have moved the Court to dismiss this action under Rules 12(b)(2) and 12(b)(3) of the Federal Rules of Civil Procedure for lack of personal jurisdiction and improper venue, respectively. Mot. to Dismiss, ECF No. 9. In the alternative, Defendants ask the Court to transfer venue to the Northern District of Alabama. *Id.* In response, the Curtiss Museum has filed a motion seeking the opportunity for discovery or to replead, should the Court find no jurisdiction or improper venue. Cross Mot., ECF No. 14.

### MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

In their motion to dismiss, which appears to be recycled from the 2018–19 litigation, Defendants point out that they are neither located in nor actively "doing business" in New York, and argue that their connection to the state is so remote that the Court lacks personal jurisdiction over them. The Curtiss Museum "maintains that under [New York Civil Procedure Law and Rules ("CPLR")] § 302(a)(1), § 302(a)(2), or § 302(a)(3)(ii), the [Court's] exercise of personal jurisdiction over [Defendants] is appropriate." Mem. in Opp., 4, June 29, 2020, ECF No. 13. The Court finds that the Curtiss Museum has met its burden with respect to personal jurisdiction.

A district court is "powerless to proceed" on a motion for preliminary injunction in the absence of personal jurisdiction. *Pablo Star Ltd. v. Welsh Gov't*, 170 F. Supp.3d

597, 611 (S.D.N.Y. 2016) (citation omitted). "[T]he party asserting jurisdiction has the burden of demonstrating that it exists." *Drake v. Lab. Corp. of Am. Holdings*, 417 F. App'x 84, 85 (2d Cir. 2011) (citing *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 507 (2d Cir. 1994)). In order to obtain a preliminary injunction, a plaintiff must make more than a *prima facie* showing of jurisdiction, and must instead "establish[] at least a reasonable probability of ultimate success on the question of the court's *in personam* jurisdiction" over the defendants. *Weitzman v. Stein*, 897 F.2d 653, 659 (2d Cir. 1990). "In the absence of an evidentiary hearing on the jurisdictional allegations, or a trial on the merits, all pleadings and affidavits are construed in the light most favorable to plaintiff, and where doubts exist, they are resolved in the plaintiff's favor." *Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*, 763 F.2d 55, 57 (2d Cir. 1985).

In a federal question case involving a non-domiciliary, the Court applies the personal jurisdiction rules of the forum state, unless the applicable statute specifically permits nationwide service of process. *PDK Labs, Inc. v. Friedlander*, 103 F.3d 1105, 1108 (2d Cir. 1997). The Lanham Act, the federal statutory regime governing trademark infringement, does not provide for nationwide service. *Id.* Consequently, and because the Curtiss Museum does not dispute Defendants' contention that the Court lacks general jurisdiction under CPLR § 301, the New York long arm statute, CPLR § 302, is determinative of whether this Court has personal jurisdiction over Defendants. If personal jurisdiction is sustainable under CPLR

6

§ 302, the Court will then decide "whether asserting jurisdiction under that [law] would be compatible with requirements of due process established under the Fourteenth Amendment to the United States Constitution." *Best Van Lines v. Walker*, 490 F.3d 239, 244 (2d Cir. 2007).

## CPLR § 302(a)(3)(ii)

The Curtiss Museum has demonstrated a reasonable probability that the Court has personal jurisdiction over Defendants in this matter pursuant to CPLR § 302(a)(3)(ii), hence the Court need not address the parties' arguments regarding the other sections of New York's long-arm statute. Under CPLR § 302(a)(3)(ii), a court in New York may exercise jurisdiction over a non-domiciliary when the defendant (1) committed a tortious act outside New York that causes injury within New York, (2) expects or should reasonably expect the act to have consequences in the state, and (3) derives substantial revenue from interstate or international commerce. *See Energy Brands Inc. v. Spiritual Brands, Inc.*, 571 F. Supp.2d 458, 464–5 (S.D.N.Y. 2008) (citations omitted) (applying § 302(a)(3) in an action filed under the Lanham Act).

### Tortious Act Requirement

"Trademark infringement can be a 'tort' for [the] purpose of determining long-arm jurisdiction." *PDK Labs, Inc. v. Proactive Labs, Inc.*, 325 F.Supp.2d 176, 180 (E.D.N.Y. 2004). "In trademark infringement cases, the injury requirement is satisfied by harm and threatened harm resulting from actual or potential confusion and deception of internet users in New York State." *Pitbull Prods., Inc. v. Universal*

7

*Netmedia, Inc.*, No. 07 Civ. 1784(RMB), 2008 WL 1700196, at *7 (S.D.N.Y. Apr.04, 2008) (citation omitted). "The out-of-state act must be the proximate cause of the injury in New York, i.e., the act must be 'so close to the injury that reasonable people would regard it as a cause of the injury.'" *Tri-Coastal Design Grp., Inc. v. Merestone Merch., Inc.*, No. 05 CIV. 10633(HB), 2006 WL 1167864, at *4 (S.D.N.Y. May 3, 2006) (*quoting Art Leather Mfg. Co., Inc. v. Albumx Corp.*, 888 F. Supp. 565, 568 (S.D.N.Y.1995).

Without taking a position with respect to the ultimate merits of the Curtiss Museum's claim of trademark infringement, the Court notes that in the present case, the Curtiss Museum has presented evidence that Defendants, both corporations under Delaware law with places of business in Alabama, have featured on their website and Facebook page a mark that allegedly infringes upon the museum's trademark, causing actual and potential confusion. *See, e.g.,* Compl. (Ex. 11), 71–84, Apr. 13, 2020, ECF No. 1-1 (screenshots from Curtiss Motorcycle's website); Compl. (Ex. 15) at 93 (a screenshot of photos posted on Curtiss Motorcycle's Facebook page). As admitted by both parties, there is a likelihood of confusion[3] between the two marks. *See, e.g.,* Chambers Aff.(2) at ¶ 21. Indeed, the USPTO itself, in an "office action" explaining its preliminary refusal,[4] in 2019, of the Curtiss Museum's attempt

---

[3] The Curtiss Museum has also submitted evidence of the actual confusion of at least two of its patrons, one of whom shared a comment through the museum's social media platform expressing excitement at the opportunity to see the museum's electric motorcycle "at the meets." Johnson Decl. (Ex. E), Apr. 24, 2020, ECF No. 4-1.

[4] Following resolution of the 2018 litigation between the parties, the USPTO granted the Curtiss Museum registration of the Script Mark. Compl. at ¶ 53. Hence, although the USPTO's research and

to register the Curtiss Script Mark, noted:

> [The museum's] mark is identical in part and highly similar in connotation and overall commercial impression to [Defendants'] mark. In addition, [the museum]'s goods and services are similar and related to the goods identified in [Defendants'] registrations. Thus, it is likely consumers will mistakenly believe the goods and services emanate from the same source.

Johnson Decl. (Ex. B), Apr. 24, 2020, ECF No. 4-1. Consequently, the Court finds the Curtiss Museum has met its burden to demonstrate the tortious act requirement of CPRL § 302(a)(3)(ii).

*Reasonable Expectation Requirement*

The "test of whether a defendant expects or should reasonably expect his act to have consequences within the State is an objective rather than subjective one." *Kernan v. Kurz-Hastings, Inc.*, 175 F.3d 236, 241 (2d Cir. 1999). The mere "likelihood or foreseeability that a defendant's product will find its way into New York" is insufficient to sustain jurisdiction. *Id.* (citations and internal quotation marks omitted). "[F]oreseeability must be coupled with evidence of a purposeful New York affiliation, for example, a discernible effort to directly or indirectly serve the New York market" or "purposeful availment of the benefits of the laws of New York such that the defendant may reasonably anticipate being haled into New York court." *Id.* (citations omitted).

---

reasoning initially explained its resistance to allowing the museum to register the Script mark, the agency's logic now applies with equal force to the museum's claim of infringement.

In the present case, with respect to the reasonable expectation requirement of CPLR § 302(a)(3)(ii), the Curtiss Museum submits that Defendants "knew full well that [their] actions would have consequences in New York State and . . . to Plaintiff." Mem. in Opp. at 16. In particular, the parties were involved in prior litigation in this District regarding the Script Mark, which was resolved by a settlement agreement that recognized the Curtiss Museum's exclusive right to use of the Script Mark and restricted Defendants' use. Ex., § 1.2, Jul. 10, 2020, ECF No. 18. *See McGraw-Hill Companies, Inc. v. Ingenium Techs. Corp.*, 375 F. Supp.2d 252, 256 (S.D.N.Y. 2005) (citation omitted) ("The torts of copyright and trademark infringement cause injury in the state where the allegedly infringed intellectual property is held."). Furthermore, after the parties executed the settlement agreement, Defendants' travelled to New York on two occasions and displayed their products at events hosted by the Curtiss Museum.[5] Chambers Aff.(2) at ¶ 6 (acknowledging the visits, which were at the museum's invitation); O'Brien Decl., ¶ 3, June 29, 2020, ECF No. 13-1 (describing a promotional video Defendants made during one of the visits). Given the nature of the prior litigation, the substance of the settlement agreement with respect to the Script Mark, and – to a lesser extent – Defendants' participation in two events at the Curtiss Museum, the Court finds a reasonable person would have been on notice that his acts in using a mark similar to the Script mark would have

---

[5] Defendants' promotion of its motorcycles is consistent with what was apparently the first formal contact between the parties, a 2017 email from a representative from Defendants suggesting that Defendants and the Curtiss Museum might "work together" on marketing efforts to co-promote the two organizations. Johnson Aff.(2), ¶ 7, June 29, 2020, ECF No. 13-3.

consequences in New York.

In addition, Defendants' commercial activity via the internet and social media supports personal jurisdiction here. Notwithstanding their contention that they have never sold a motorcycle in New York, Defendants admit that they have no physical showrooms, their sales are web-based, and all of their advertising is conducted through their website, Facebook page, and Instagram account. Chambers Aff.(2) at ¶ 7–15. In *Mrs. U.S. Nat. Pageant, Inc. v. Miss U.S. Org., LLC*, 875 F. Supp.2d 211 (W.D.N.Y. 2012), another court in this District summarized the appropriate jurisdictional analysis under CPLR § 302(a)(3)(ii) for a company's internet and social media activity:

> In internet cases, the analytical framework that has evolved employs a sliding scale, based on the degree to which the defendant has used the internet in its commercial or other relevant activities. At one end of that scale is the creation or maintenance of a purely "passive" website, which does little more than make information available to those who are interested in it or the information that it contains. At the opposite end of the spectrum are defendants who enter into contracts, or otherwise interact with residents of other jurisdictions, that involve the knowing and repeated transmission of computer files over the Internet . . . .

> What is most pertinent here is the middle ground [, which] is occupied by interactive Web sites where a user can exchange information with the host computer. In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site . . . . This middle ground covers a wide range of websites, including those where a user can purchase products online, establish an online account, communicate with the owner of the site or its representatives, or download order forms or other documents . . . . Generally, an interactive website supports a finding of personal jurisdiction . . . .

*Mrs. U.S. Nat. Pageant, Inc.,* 875 F. Supp. 2d at 220–21 (internal quotation marks

and citations omitted).

Here, Defendants' website and social media presence clearly falls into that middle ground. While Defendants state that a potential customer must ultimately interact with a company sales representative before an order can be finalized,[6] their website nevertheless displays the full range of company product offerings, and invites users to design a motorcycle and initiate its purchase, and to invest in the company. *See, e.g.,* Invest, CURTISS MOTORCYCLE, https://curtissmotorcycles.com/invest/ (last visited Feb. 8, 2021). Moreover, Defendants' Facebook page boasts over 120,000 followers, and copies of Defendants' Facebook posts show not only interactive comments and communications with company representatives, but also invitations to users to visit the company website and initiate a product order. Johnson Decl. (Ex. D), Apr. 24, 2020, ECF No. 4-1. *See Sec. & Exch. Comm'n v. PlexCorps*, No. 17CV7007CBARML, 2018 WL 4299983, at *14 (E.D.N.Y. Aug. 9, 2018) (finding Defendants' website and Facebook accounts "fall somewhere in the middle" of the internet activity spectrum where "[t]he Individual Defendants used the Facebook accounts to convey information about [their company and how to invest]; responded to questions about [its projects] posed by other Facebook users; and provided links to the Individual Defendants' . . . website.")

---

[6] Although Defendants claim they are no longer in the business of selling t-shirts or hats, the Curtiss Museum has also states that counsel for the museum purchased a shirt with an allegedly infringing marks from Defendants in November of 2018 via one of Defendants' now-defunct websites involving no direct interaction with a company representative. Compl. at ¶ 27.

Accordingly, the Court finds that the Curtiss Museum has met its burden to demonstrate that it was reasonably foreseeable that Defendants could be "haled into New York courts." *See, e.g., Starmedia Network, Inc. v. Star Media, Inc.*, No. 00 CIV 4647 (DLC), 2001 WL 417118, at *3 (S.D.N.Y. Apr. 23, 2001) ("The fact that the defendant has not yet made a sale in New York does not defeat jurisdiction under Section 302(a)(3).").

*Substantial Revenue from Interstate Commerce Requirement*

Lastly, the "substantial revenue from interstate commerce" requirement of CPLR § 302(a)(3)(ii) does not necessitate that the defendant has any direct contact with New York. *Ingraham v. Carroll*, 687 N.E.2d 1293 (N.Y. 1997). Rather, this requirement is simply intended to "narrow[] the long-arm reach to preclude the exercise of jurisdiction over non-domiciliaries who might cause direct, foreseeable injury within the State, but whose business operations are of a local character." *Id.* (internal quotation and citation omitted). Simply put, the substantial revenue requirement is a "bigness requirement," designed to ensure that the defendant is "economically big enough to defend suit in New York." *Bassili v. Chu*, 242 F. Supp.2d 223, 230 (W.D.N.Y. 2002) (quoting Siegel, *New York Practice*, § 88 at 136 (2d ed)).

Here, the Curtiss Museum has submitted Defendants' filings with the Securities and Exchange Commission indicating not only that they would solicit investors in New York, but also that they had revenues in the millions of dollars dating back to at least 2013. *See, e.g.,* O'Brien Decl. (Ex. E), 49, June 29, 2020, ECF

13

No. 13-1. The museum has also submitted news articles indicating Defendants have sold over 1,300 high-end motorcycles (purchase price between $70,000 and $150,000) in their history, and evidence that Defendants have raised over $1.7 million from more than 70 investors through wefunder.com. O'Brien Decl. (Exs. F and G), June 29, 2020, ECF No. 13-1; O'Brien Reply Decl. (Ex. C), 26, Jul. 13, 2020, ECF No. 19-2. This showing was sufficient to satisfy CPLR § 302(a)(3)(ii)'s "bigness requirement."

**Constitutional Requirements**

Having satisfied itself that the Curtiss Museum has shown a reasonable probability that the Court has personal jurisdiction over Defendants under New York's long-arm statute, the Court turns now to an analysis of whether personal jurisdiction comports with the Due Process Clause of the United States Constitution. The constitutional due process analysis "has two related components: the 'minimum contacts' inquiry and the 'reasonableness' inquiry." *Mrs. U.S. Nat. Pageant, Inc.*, 875 F. Supp.2d at 219.

*Minimum Contacts*

With respect to minimum contacts, the Court must determine whether Defendants have sufficient contacts with the forum state to justify the court's exercise of personal jurisdiction. *See International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). "[W]here business activities reach out beyond one state and create continuing relationships and obligations with citizens of another state," courts may find that jurisdiction is proper, provided the contacts proximately result from actions by the

14

defendant himself. *Travelers Health Ass'n v. Com. of Va. ex rel. State Corp. Comm'n*, 339 U.S. 643, 647 (1950); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985).

The Court finds that the assertion of personal jurisdiction over Defendants comports with due process for the same reasons that satisfied the Court in its CPLR § 302(a)(3)(ii) inquiry. Specifically, the Court finds that personal jurisdiction is proper here because Defendants: (1) maintain a business in which both sales and investments are solicited almost entirely online through the company's website and social media platforms; (2) have already engaged in prior litigation with the Curtiss Museum with respect to the Script Mark, and executed a settlement agreement that imposed ongoing and substantial limitations on Defendants' rights to use the Script Mark; and (3) following the execution of the settlement agreement, made two visits to the Curtiss Museum to display and promote their products alongside classic motorcycles designed by Glenn Curtiss himself.

*Reasonableness*

The "reasonableness" inquiry requires the Court to decide "whether the assertion of personal jurisdiction comports with 'traditional notions of fair play and substantial justice'—that is, whether it is reasonable to exercise personal jurisdiction under the circumstances of the particular case." *Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 60 (2d Cir. 2012). In *Asahi Metal Indus. Co., Ltd. v. Superior Ct. of Calif., Solano Cty.*, 480 U.S. 102, 113 (1987), the Supreme Court identified five factors to help a court assess the reasonableness of asserting personal jurisdiction: (1) the

burden on the defendant; (2) the interests of the forum state; (3) the plaintiff's interest in obtaining relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies. *See Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 173 (2d Cir. 2010) (discussing and applying the *Asahi* factors).

After reviewing the record in light of the foregoing factors, the Court finds that the exercise of jurisdiction over Defendants is reasonable. With regard to the first *Asahi* factor, although the Court acknowledges some burden on Defendants if they must travel to New York for trial, the Court finds that recent advances in communication and transportation mitigate the burden's severity. *Chloe*, 616 F.3d at 173 (citation omitted). The second factor favors jurisdiction by this Court, as "a State generally has a 'manifest interest' in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors." *Burger King Corp.*, 471 U.S. at 462. The third factor favors jurisdiction, as well, because the Curtiss Museum is located here. *Chloe*, 616 F.3d at 173. "The final two factors are neutral." *Id.*

For the foregoing reasons, the Court finds that the Curtiss Museum has satisfied its burden to demonstrate the reasonable probability that the Court has personal jurisdiction over Defendants in this action.

## MOTION TO DISMISS FOR IMPROPER VENUE

Defendants also maintain that, even if the Court has personal jurisdiction, the case should nevertheless be dismissed or transferred because "the United States

District Court for the Northern District of Alabama, Southern Division, is the only proper venue in this case . . . ." Mot. to Dismiss at 12. Defendants' position is based on their assertion that "[t]he only Defendant resides in Alabama." Mot. to Dismiss at 13. The Court disagrees with Defendants, and finds that venue is proper in this District.

"When venue is challenged by a defendant, plaintiff bears the burden of proving that venue is proper in the forum state for each claim against each defendant." *Sea Tow Servs. Int'l, Inc. v. Pontin*, 472 F. Supp.2d 349, 363 (E.D.N.Y. 2007) (internal quotation marks and citation omitted). As the Lanham Act does not have its own venue provision, the general civil venue statute, 28 U.S.C. § 1391, is applicable. Under 28 U.S.C. § 1391(b)(1), "a civil action may be brought in ... a judicial district in which any defendant resides." If the defendant is "an entity with the capacity to sue and be sued in its common name under applicable law," then that defendant resides "in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question." 28 U.S.C. § 1391(c)(2). *See also Leroi, Inc. v. Csc3c, Inc.,* No. 5:15-CV-0565, 2016 WL 4997228, at *8 (N.D.N.Y. Sept. 19, 2016) ("[i]t is well-established that a defendant may be found in any district in which he is amenable to personal jurisdiction; thus, venue and jurisdiction are coextensive.") (internal quotation marks and citations omitted).

Because the Curtiss Museum has satisfied its burden to demonstrate the reasonable probability that the Court has personal jurisdiction over Defendants in

this action, and because Defendants are "entit[ies] with the capacity to sue and be sued in [their respective] common name[s] under applicable law," the action should not be dismissed or transferred under § 1391 for lack of venue. *See Verragio, Ltd. v. AE Jewelers, Inc.*, No. 15 CIV. 6500 (CM), 2016 WL 278060, at *1–2 (S.D.N.Y. Jan. 19, 2016).

## MOTION FOR A PRELIMINARY INJUNCTION

The Court turns now to the Curtiss Museum's request for a preliminary injunction. "[A] party seeking a preliminary injunction must establish (1) irreparable harm and (2) either (a) a likelihood of success on the merits, or (b) sufficiently serious questions going to the merits of its claims to make them fair ground for litigation, plus a balance of the hardships tipping decidedly in favor of the moving party." *Oneida Nation of N.Y. v. Cuomo*, 645 F.3d 154, 164 (2d Cir. 2011). As the Supreme Court has made clear, "[a] preliminary injunction is an extraordinary remedy never awarded as of right . . . . In each case, courts must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (internal quotation marks and citations omitted). After a thorough review of the parties' papers, the Court finds that the Curtiss Museum has failed to show that a preliminary injunction is appropriate at this time.

A showing of irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction. *Faiveley Transp. Malmo AB v. Wabtec Corp.*,

559 F.3d 110, 118 (2d Cir. 2009). "[C]ourts may no longer simply presume irreparable harm [upon a showing of likelihood of success on the merits]; rather, plaintiffs must demonstrate that, on the facts of the case, the failure to issue an injunction would actually cause irreparable harm." *WPIX, Inc. v. ivi, Inc.*, 691 F.3d 275, 285 (2d Cir. 2012) (applying the standard clarified by the Second Circuit in *Salinger v. Colting*, 607 F.3d 68, 79–80 (2d Cir. 2010)). A plaintiff experiences irreparable harm where the remedies available at law, such as monetary damages, are inadequate to compensate for the injury. *Id.*

"Irreparable harm exists in a trademark case when the party seeking the injunction shows that it will lose control over the reputation of its trademark . . . because loss of control over one's reputation is neither 'calculable nor precisely compensable.'" *Mrs. U.S. Nat. Pageant, Inc.*, 875 F. Supp.2d at 226–27 (quoting *U.S. Polo Ass'n, Inc. v. PRL USA Holdings, Inc.*, 800 F. Supp.2d 515, 540 (S.D.N.Y. 2011)). Nevertheless, the Second Circuit has explained that courts must not simply adopt "a 'categorical' or 'general' rule or presume that the plaintiff will suffer irreparable harm[, but] . . . must actually consider the injury the plaintiff will suffer if he or she loses on the preliminary injunction but ultimately prevails on the merits." *Rush v. Hillside Buffalo, LLC*, 314 F. Supp.3d 477, 486 (W.D.N.Y. 2018) (quoting *Salinger*, 607 F.3d at 80)). In that light, "conclusory statements of loss of reputation will not justify an irreparable harm finding." *Rush*, 314 F. Supp.3d at 485 (citations omitted).

The Curtiss Museum argues that a preliminary injunction must be granted to

protect its ability "to control the public perception of the quality of its products." Mem. in Support, 12, Apr. 24, 2020, ECF No. 4-2. Specifically, it is alleged that the Defendants' use of the mark, "threatens the Curtiss Museum's ability to promote its educational and cultural activities and to preserve the reputation and image of Glenn H. Curtiss." *Id.* at 13. Beyond these conclusory allegations, however, the museum presents no firm evidence that it will suffer irreparable harm from Defendants' present use of the mark to promote a new line of high-end electric motorcycles, which the Curtiss Museum admits is not likely to go into production until February 2021.

"The law in this Circuit requires that irreparable harm be likely, not merely possible." *Curry v. City of New York*, No. 10-CV-5847 (SLT) (LB), 2010 WL 5391472, at *3 (E.D.N.Y. Dec. 22, 2010). In failing to supply evidence of the loss of reputation or good will beyond its own conclusory allegations, the Curtiss Museum has not made a sufficient showing that irreparable harm is likely at this point in this action. *Rush*, 314 F. Supp.3d at 477 (citations omitted).

Having determined that the museum has not established the existence of irreparable harm, the Court need not address the other factors necessary for the issuance of a preliminary injunction. *Id.* The Curtiss Museum's motion for a preliminary injunction is denied.

## CONCLUSION

For the reasons explained above, the Court finds that Plaintiff Curtiss Museum has shown a reasonable probability that the Court has personal jurisdiction

and venue in this matter. However, the museum has not shown that a preliminary injunction is appropriate at this time. Accordingly, it is hereby,

ORDERED that Plaintiff Curtiss Museum's motion for a preliminary injunction [ECF No. 4] is denied; and it is further

ORDERED that Defendants' motion to dismiss Plaintiff Curtiss Museum's complaint [ECF No. 9] is denied; and it is further

ORDERED that Plaintiff Curtiss Museum's cross-motion for discovery or to replead [ECF No. 14] is denied as moot; and it is further

ORDERED that Defendants file and serve an answer to Plaintiff Curtiss Museum's complaint on or before 30 days from the date of this order.

SO ORDERED.

Dated:       February 11, 2021
             Rochester, New York

                                        ENTER:


                                        _Charles J. Siragusa_
                                        CHARLES J. SIRAGUSA
                                        United States District Judge